IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 16-CR-30125-MJR |
| | ) |
| OLIVER HAMILTON, | ) **FILED UNDER SEAL** |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by Donald S. Boyce, United States Attorney for the Southern District of Illinois, and Norman R. Smith, Assistant United States Attorney, herein submit the Government's Sentencing Memorandum pertaining to Defendant Oliver Hamilton.

1.  The United States and the Defendant both agreed, pursuant to the plea agreement, that the appropriate sentence to recommend to the Court, that is "sufficient but not greater than necessary" is a year and a day incarceration, followed by three years supervised release and restitution. [Doc. 7]. This sentencing memorandum addresses why the United States believes that the recommended sentence is the appropriate disposition in consideration of the statutory sentencing factors in 18 U.S.C. § 3553 within the backdrop of the plea negotiations in this case.

**APPLICATION OF 18 U.S.C. § 3553 SENTENCING FACTORS, INTRODUCTION:**

2.  The Court is required to impose an appropriate sentence consistent with a particular offender's crime and background that satisfies the prescribed

1

goals of protecting the public, promoting respect for the law, and providing just punishment for the offense.  See, 18 U.S.C. § 3553(a)(2).  In determining the appropriate sentence, this Court must consider the following enumerated statutory factors:

(1) nature and circumstances of the offense and the history and characteristics of the defendant;

(2) need for the sentence imposed to accomplish each of the purposes of sentencing listed in § 3553(a)(2);

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant; and

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) kinds of sentences available to the Court;

(4) the Sentencing Guidelines;

(5) relevant policy statements issued by the Sentencing Commission;

(6) need to avoid unwarranted sentencing disparities among similarly situated defendants; and

(7) need to provide restitution to the victims.

**DISCUSSION OF THE § 3553(A) FACTORS:**

Each applicable sentencing factor will be addressed as follows:

**(1) nature and circumstances of the offense and the history and characteristics of the defendant;**

*<u>Nature and Circumstances of the Offenses</u>*:

  3. The defendant, Oliver Hamilton, was sworn in as the East St. Louis Township Supervisor on Thursday, March 17, 2011, following the death of the previous Township Supervisor, Robert Eastern, Jr.  It is an elected position.  Oliver Hamilton was re-elected to the position in 2013.  As Township Supervisor he was the chief executive officer of the township, the supervisor of general assistance, and the chairman of the township's board of trustees.  He was the treasurer of township funds and was required to keep a just and true account of the receipts and expenditures of all public moneys.  The sole function of the East St. Louis Township is administering assistance to residents of the township.  Statutorily, there is little limitation on the types of assistance that can be provided which structurally makes the township form of government vulnerable to financial abuses.  As an elected official, Hamilton's public service was a position of public trust, not to be abused for private gain.

  4. The Federal Bureau of Investigation and the Metro-East Public Corruption Task Force in the Summer of 2016 received information from several sources indicating that Oliver Hamilton was misusing funds of the East St. Louis Township.  As part of the investigation, thirty-three subpoenas were issued for documents.  On June 3, 2016, a subpoena for documents was served on the East St. Louis Township offices.  Based on the production of documents, which included undocumented expenditures, suspicious expenditures and misclassified expenditures, a federal search warrant was obtained and executed on the East St. Louis Township.  F.B.I. and I.R.S./C.I. agents thoroughly reviewed the township's financial records.

3

5.  The East St. Louis Township had an American Express credit card that was to only be used for legitimate township expenses. The credit card bills were paid with township revenue. A review of the credit card expenses indicated that some of the expenses were clearly related to township business, others were clearly not for legitimate township business and there was a third category of expenses that would be hard, if not impossible, to determine if the expenses were for legitimate township expenses or not. For example, the East St. Louis Township American Express Credit Card records contained more than 140 transactions at Home Depot stores which totaled more than $33,000 between May 14, 2011 and May 1, 2016. The Home Depot records were subpoenaed and based on the nature of many of the charges, a significant portion of the purchased and rented items were likely used in Hamilton's contracting business. The East St. Louis Township American Express Credit Card records contained transactions at Erb Turf Equipment which totaled more than $8,800 between January 1, 2013 and May 1, 2016. Some of the expenses were easier to classify as personal. For example, the East St. Louis Township American Express Credit Card records contained expenses for airline tickets, rental cars, and parking related to trips to Las Vegas, Nevada, by Oliver Hamilton; his wife, Belinda Hamilton; East St. Louis Township Trustee Michael D. Roberts; and his wife, Betty J. Roberts. For one of the trips reimbursement was made to the Township for Hamilton's wife's travel. The propriety of some of the expenses could be questioned, as an example, renting nine hotel rooms and renting two cars for a CeaseFire conference. CeaseFire was a

4

program for which the Township received a grant.  These expenses were not viewed



as criminal.

Approximately $2,700 was spent at Auto Spa for car washes, detailing and occasionally oil changes. He also received reimbursement from the Township for car washes in addition to the charges on the American Express card.



Significant expenses on the credit card appeared to be for legitimate Township activities.  For example, there were unusually large expenses at Walmart:

| Date | Vendor | Location | Note | Amount |
|---|---|---|---|---|
| 08/23/13 | WAL-MART SUPERCENTER O FALLON DISCOUNT STORE | IL | school supplies | $1,091.54 |
| 08/23/13 | WAL-MART SUPERCENTER BELLEVILLE DISCOUNT STORE | IL | school supplies | $215.55 |
| 08/23/13 | WAL-MART SUPERCENTER O FALLON DISCOUNT STORE | IL | school supply | $6,996.70 |
| 08/23/13 | WAL-MART SUPERCENTER O FALLON DISCOUNT STORE | IL | school supply | $1,145.51 |

5

Wal-Mart receipts were examined that were seized during the search warrant. These expenses appeared to be for the food pantry, in furtherance of the mission of the Township:



These expenses appeared to be for childrens' clothes for the community, in furtherance of the mission of the Township:



6

6.     The federal investigation continued. Checking account records for eight separate East St. Louis Township accounts, which were held at First Illinois Bank, were reviewed. Multiple checks were drafted and cashed in the name of Oliver Hamilton. The memo line of the checks contained the words "Child Support."



Multiple $1500 checks were drafted and cashed in the name of Padrone Construction. The memo line of the checks contained the words grass cutting, snow removal or janitorial services. Investigative information suggested that Padrone Construction, while in the name of a resident of one of his tenants was actually controlled by Oliver Hamilton. That individual, it appeared, used Hamilton's Township American Express card to make purchases for non-township business. Sometimes he would sign Hamilton's name and occasionally his own name:



7

7. The federal investigation showed the exact loss amount of Oliver Hamilton's misuse of public funds would be difficult to ascertain with precision. A defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Rollins,* 544 F.3d 820, 838 (7th Cir. 2008). However, evidentiary standards are relaxed at sentencing and a sentencing court may consider information that has a sufficient indicia of reliability to support its probable accuracy. *Id.* The Government is not required to prove loss with specificity. Rather, when sentencing, the Court need only make a reasonable estimate of loss. *U.S. Sentencing Guidelines Manual* § 2B1.1, cmt. n. 3(c). The overall loss, the agents concluded with a high degree of confidence, would be above $40,000 which would be relevant for the advisory guideline calculations. Therefore, both parties entered into a plea agreement for a mid-range agreed sentence.

8. Relevant to the nature and circumstances of the offense is that while Oliver Hamilton was misusing public funds, the East St. Louis Township was going further and further in debt. In the Annual Financial Report for the year ending March 31, 2013, the auditor reports a deficit of almost $2.5 million in the General Fund:

> The Township has continued to experience cash flow problems and declining revenues, especially regarding the Township's General Fund. The Township's financial statements have been presented on the basis that it is a going concern, which contemplates the realization of assets and the satisfaction of liabilities in the normal operating cycle. A deficit of $2,490,582 was reported as the fund balance of the Town Fund as of March 31, 2013. The Town Fund is the main operating fund of the Township.

In the Annual Financial Report for the year ending March 31, 2014, the auditor reports that the Township borrowed $200,200 from a local bank during the fiscal year in order to pay operating activities. The overall deficit increased substantially from 2013 through 2014:

8

> The Township has continued to experience cash flow problems and declining revenues, especially regarding the Township's General Fund. The Township's financial statements have been presented on the basis that it is a going concern, which contemplates the realization of assets and the satisfaction of liabilities in the normal operating cycle. A deficit of $2,737,989 was reported as the fund balance of the Town Fund as of March 31, 2014. The Town Fund is the main operating fund of the Township.

In the Annual Financial Report for the year ending March 31, 2015, the auditor reports yet another substantial increase in the deficit:

> The Township has continued to experience cash flow problems and declining revenues, especially regarding the Township's Town Fund. The Township's financial statements have been presented on the basis that it is a going concern, which contemplates the realization of assets and the satisfaction of liabilities in the normal operating cycle. A deficit of $2,984,983 was reported as the fund balance of the Town Fund as of March 31, 2015. The Town Fund is the main operating fund of the Township.

Oliver Hamilton's misuse of public funds was punching holes in a ship taking on water and his conscious decisions over a repeated basis to ignore the plight of the township for his financial betterment suggests that the recommended prison sentence is an appropriate disposition.

### *Personal History and Characteristics of the Defendant*:

9. Factored into the United States' agreement for the propriety of the mid-range sentence, the history and characteristics of Oliver Hamilton were considered. At age 63 he has no recent criminal history other than some traffic-related charges. At a younger age he had issues with carrying concealed weapons while growing up in East St. Louis.

10. The defendant reported a stable upbringing, raised by tough parents with five siblings in the tough environment of East St. Louis. He has a high school diploma and chose to work as opposed to continuing his education.

11. Oliver Hamilton has a grown son from a previous marriage, three grown children from his present marriage and three children from relationships

with three other women. Two of those children are still minors for whom Oliver Hamilton pays child support.

12. While he abused a position of trust as a public servant as Township Supervisor, not all of his actions were done to line his own pockets. Oliver Hamilton also served as a St. Clair County Board Member from 2011 through 2016 and was also a member of the East Side Health District from 2011 through 2016.

13. Apart from public service, Oliver Hamilton has operated his own business, Hamilton Contractors.

14. Oliver Hamilton is the rep-payee for Social Security disability payments for a number of individuals that reside at 1232 Cleveland, East St. Louis, Illinois.



Oliver Hamilton uses this address as his residence for political purposes.

### City of East St. Louis Democratic Precinct Committeemen
Elected March 15, 2016

| 2 | Oliver W. Hamilton | 1232 Cleveland Ave. | 62201 | 3/6 |

10

There has been a lot of controversy surrounding that address:

http://fox2now.com/2016/11/07/east-st-louis-supervisor-accused-of-filling-out-ballots-himself/



POSTED 10:28 PM, NOVEMBER 7, 2016, BY CHRIS HAYES,

EAST ST. LOUIS, IL (KTVI) – It may sound like Americans exercising their rights, but one long-time observer who happens to live in the community thinks it's unbelievable and suspicious. Questions begin at a politician's property where two dozen registered voters are reportedly living. It's the home of East St. Louis Township Supervisor Oliver Hamilton. One of his Hamilton's jobs is to dispense benefits to needy residents.

    **(2) need for the sentence imposed to accomplish each of the purposes of sentencing listed in § 3553(a)(2);**

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

15.    The same factors that demonstrate the serious nature and circumstances of this offense also apply to call for a sentence that promotes respect for the law and provides just punishment.

    a. **Seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense;**

16.    Hamilton's offense and relevant criminal conduct are extremely serious. Oliver Hamilton's position as the Supervisor of the East St. Louis

Township was to serve the needy in East St. Louis.  As of 2015, 45.8% of the East St. Louis population lived below the poverty line.  https://datausa.io/profile/geo/east-st.-louis-il/  The harm caused by Hamilton's criminal conduct goes beyond the financial impact.  Hamilton's corruption only further eroded the trust that its citizens hope for in its leaders.  The systemic corruption in the East St. Louis area has been a breeding ground for further crime.  There is a cause and effect.

> Undoubtedly the most harmful consequence of endemic public corruption in a community is the apathy that it engenders – the culture of acceptance. Over many years of seeing corruption in almost every facet of government, many residents of a community begin to simply accept corruption as the immutable status quo. They come to assume government is broken and ineffective and destined to function corruptly. The consequences of this culture of acceptance in a community are many. Some residents simply disengage from the political process and no longer trust their government to function well or in their interest. Other residents may come to believe they must engage in corruption in order to gain government benefits themselves. Still others will begin to look the other way when they witness corrupt transactions. And honest folks are discouraged from entering politics or suffer from the skepticism engendered by others' misdeeds.

*"The Costs of Public Corruption - And The Need for the Public to Fight Back,"* by Patrick Fitzgerald, Former U.S. Attorney for the Northern District of Illinois. https://www.justice.gov/usao/priority-areas/financial-fraud/public-corruption

According to recent statistics, East St. Louis ranks #1 in the entire nation as the place you are most likely to fall victim to a crime.  *"Safest and Most Dangerous Cities: Illinois Town Ranks as No. 1 'Most Dangerous',"* January 20, 2017, http://patch.com/illinois/chicago/safest-most-dangerous-cities-illinois-town-ranks-no-1-most-dangerous

    The corruption in East St. Louis has been systemic.  Now four years ago, some of the federal prosecutions of metro-east corruption were detailed for the

Court in *U.S. v. Ramone Carpenter*, 12-cr-30212-MJR, Doc.33. Since that filing, the incidences of public corruption in the Metro-East have not subsided. "Nine arrested on public-corruption charges in Metro-East St. Louis," December 6, 2016, https://ilnews.org/11217/nine-arrested-public-corruption-charges-metro-east-st-louis/

Oliver Hamilton's abuse of his position of trust therefore is more serious than just the dollars misappropriated. The recommended sentence of a year and a day in jail is necessary to promote respect for the law and to provide just punishment for Hamilton's offense conduct.

**Afford adequate deterrence to criminal conduct**

17. There is specific and general deterrence. Given his age, his lack of a recent criminal history, the likely period of incarceration Hamilton is to receive coupled with his present felony criminal conviction, specific deterrence hopefully will not be an issue. He should not have an occupation where he is a fiduciary or in a position of trust while he is on supervision.

18. General deterrence is another sentencing philosophy that is analogous of the need to "promote respect for the law." The effectiveness of a prison sentence for general deterrence and a lengthy prison sentence for greater deterrence is and has been highly debated. However, even the naysayers against prison sentences for general deterrence agree that the certainty of being caught and receiving a prison sentence is a deterrent. Certainly "white collar" criminals are more apt than the average street crime criminal to be cognizant of current events and be deterred by another person's sentence. The recommended sentence of a year and a day in prison is necessary to promote respect for the law.

### b. Protect the public from further crimes of the defendant

19. Given the Defendant's age, likely sentence, with no prior criminal history pertaining to fraud or embezzlement, there is a low risk of recidivism.

### c. Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

20. This factor is not significant in this case. The defendant has the skills to be gainfully employed on his release from prison. Oliver Hamilton has no history of alcohol abuse or recent history of substance abuse. He has no reported mental or emotional problems.

### kinds of sentences available to the Court;

21. Count 1 of the Indictment carries a statutory maximum penalty of up to twenty years, making it a Class "C" felony. It carries a possible term of supervised release of up to 3 years.

### the Sentencing Guidelines;

22. "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Peugh v. United States*, 133 S. Ct. 2072, 2080, 186 L. Ed. 2d 84 (2013), citing *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).

23. The Guidelines call for Offense level 13, a Criminal History Category of I, with a USSG imprisonment range of 12 to 18 months' imprisonment, with a fine of $5,500 - $55,000. Since the offense level is in Zone "C" the actual advisory range is 6 months' incarceration to 18 months' incarceration. The Guideline calculation is as follows:

| | | |
|---|---|---|
| Wire Fraud | | |
| § 2B1.1(a)(1) | Base offense level = | 7 |
| § 2B1.1(b)(1)(D) | Loss of more than $40,000 but not more than $95,000 [Nov. 2016 manual][1] | +6 |
| § 3B1.3 | Abuse of a position of trust | +2 |
| **Adjusted offense level** | | |
| | | 15 |
| § 3E1.1(a) | Acceptance of Responsibility | -2 |
| | Total offense level | 13 |
| | Criminal history | none |
| § 5E1.2 | Fine range | $5,500 -$55,000 |
| § 5E1.1(a) | Restitution | $40,001 |
| | Advisory range | 12 - 18 months |

**(5) relevant policy statements issued by the Sentencing Commission;**

24.     In March of 2016, the United States Sentencing Commission released a study entitled, *"Recidivism Among Federal Offenders: A Comprehensive Overview."* http://www.ussc.gov/research/research-publications/recidivism-among-federal-offenders-comprehensive-overview  According to that study, offenders over sixty years old at the time of release had a recidivism rate of 16.0 percent.  The

---

[1] U.S.S.G. § 1B1.11 provides that the court shall use the Guidelines Manual in effect at the time of sentencing unless its use would violate the ex post facto clause.  It does not in this application of the Guidelines in this case.

recommended sentence of imprisonment is necessary, not because of a great risk of individual recidivism, but because of the other statutory sentencing factors.

**(6) need to avoid unwarranted sentencing disparities among similarly situated defendants;**

25. The advisory sentencing guidelines are the initial "benchmark" in avoiding unwarranted sentencing disparities. *Rita v. U.S.*, 551 U.S. 338 (2007). "The Guidelines were intended to reduce unjustified sentencing disparities, so that similar crimes by similar defendants would result in similar sentences." *United States v. Ferguson*, 831 F.3d 850, 853 (7th Cir. Aug. 3, 2016).

26. The United States is unaware of any sentencing disparity in the sentence recommended.

**(7) need to provide restitution to the victims.**

27. The Defendant owes restitution to the East St. Louis Township in the amount of $40,001.

### III. GOVERNMENT'S RECOMMENDATION

28. Balancing all of the sentencing factors with the need to provide just punishment with the need for a sentence that provides societal deterrence, a sentence sufficient but not greater than necessary is:

    A. **366 days of incarceration, three years supervised release.**

    B. **Fine:** No fine based upon the amount of restitution that is owed.

    C. **Special Assessment:** $100

    D. **Restitution as set forth above**.

WHEREFORE, the United States submits this sentencing memorandum.

          Respectfully submitted,

          DONALD S. BOYCE
          United States Attorney

          *s/Norman R. Smith*
          NORMAN R. SMITH
          Assistant United States Attorney
          Nine Executive Drive
          Fairview Heights, IL  62208
          (618) 628-3700
          Fax:  (618) 628-3720
          E-mail:  Norman.Smith@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 16-CR-30125-MJR |
| | ) | |
| OLIVER HAMILTON, | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendant. | ) | |

I hereby certify that on March 21, 2017, I caused to be electronically filed:

**GOVERNMENT'S SENTENCING MEMORANDUM**

with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Clyde Kuehn

A copy will be emailed to:
Robin Wheeler, U.S. Probation

        Respectfully submitted,

        DONALD S. BOYCE
        United States Attorney

        *s/ Norman R. Smith*
        NORMAN R. SMITH
        Assistant United States Attorney
        Nine Executive Drive
        Fairview Heights, IL  62208
        (618) 628-3700
        Fax:  (618) 628-3720
        E-mail: Norman.Smith@usdoj.gov